### THE TOMPKINSVILLE.

### THE MIDDLESEX.

### THE WOLLASTON.

### THE BALDROCK.

Nos. 16527, 16715, 16730.

District Court, E. D. New York.

June 22, 1943.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for Eastern Transp. Co.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City, and Bingham, Dana & Gould, of Boston, Mass. Esqs., (Albert T. Gould, of Boston, Mass., and Edwin S. Murphy, of New York City, of counsel), for Coastwise Transp. Corporation.

Macklin, Brown, Lenahan & Speer, of New York City (John F. Quarto, of New York City, of counsel), for Martin Marine Transp. Co.

BYERS, District Judge.

These causes were consolidated for trial by stipulation in the record, and involve but one question, namely, the cause of the collision between the westbound S. S. Middlesex, overtaking the tug Baldrock and her tow, in the East River near the easterly side of the Hell Gate Railroad Bridge on March 12, 1942, at about 6:25 p.m. E.W.T.

In the first cause the Eastern Transportation Company (herein called Eastern) as owner of the seagoing barge Tompkinsville, one of the colliding vessels, libeled the Middlessex and joined Coastwise Transportation Corporation (herein called Coastwise), her owner. The latter has claimed the Middlesex.

In the second, Martin Marine Transportation Company, as owner of the barge Wollaston also in the tow, and alongside the Tompkinsville to starboard, sues the Middlesex and her owner, and also the tug Baldrock, for damage to the Wollaston occasioned by the collision between the Tompkinsville and the Middlesex. The Baldrock was claimed by her owner, Eastern, and the Middlesex was claimed by Coastwise.

In the third, Coastwise, as owner of the Middlesex, libeled the tug Baldrock and the barge Tompkinsville, both of which were claimed by Eastern as owner.

It is undisputed that at the time and place stated the Tompkinsville, being the port barge in the westbound tow, consisting of the tug Baldrock and three barges made up abreast at the end of two 30-fathom hawsers to the outside corners of the three barges, sheered to her own port and struck the Middlesex, also westbound, on her starboard side about 140 feet aft of her stem, whereby damage was sustained by those two vessels, and by the Wollaston.

The only question is whether the sheer was caused by suction created by the Middlesex as she overtook and passed the tow, or by some unidentified and unexplained cause, which means that the sheer would have occurred even if the Middlesex had not been in those waters at all.

The evidence is in dispute as to only one important question, whether the sheer started when the Middlessex was astern of the Tompkinsville, or when the two vessels were nearly abreast.

It seems clear that the latter must be the true version, for otherwise the Middlesex would have at least blown an alarm upon observing so perilous a development, and perhaps reduced her speed, or stopped her engines. Her own witnesses say that she did neither, as of course do the witnesses for the tug and the damaged barge.

It is true that the Middlesex had to navigate with reference to an eastbound tow which was gradually veering toward the Astoria shore, at a distance of 300 feet away from the collier on her port hand, but the excuse of her master, that he did not blow an alarm for fear of its effect on that tow, exposes the weakness of his own case. As the overtaking vessel, the Middlesex owed her first duty to the tug which had assented to his passing signal, and to her tow, and I am satisfied that the master knew that. Since he blew no alarm, it is a fair inference that he knew of no occasion for doing so, i.e., he did not observe the sheer until he was nearly abreast of the Tompkinsville sufficiently to create a suction which drew that vessel toward his own; then he trusted his own full speed of about 8 knots or better to avoid the collision, but without success.

The issue of fact is thus resolved against the Middlesex, and she will be held solely at fault.

### Findings of Fact.

1. Ownership and operation of the various vessels involved in these causes are found to be as pleaded and above recited.

2. On March 12, 1942, the tug Baldrock had in tow, westbound, the seagoing barges Tompkinsville, Wollaston and Hock, made up abreast on two 30-fathom hawsers leading from the tug to the port bow corner of the Tompkinsville, the port barge in the tow, and to the starboard bow corner of the Hock, the starboard barge. There were proper cross and spring lines between the barges, holding them safely alongside and abreast of each other.

3. There was a flood tide running easterly in the East River, of a strength of about 2 knots, and high water in Hell Gate would occur at 8 p.m. E.W.T.

4. There was a light northwest wind, of no effect; the weather was clear, and there is no question of visibility or lack of lights.

5. The East River is about 1,000 feet wide as to navigable depth, at Sunken Meadow, and narrows down to about 650 feet under the Railroad Bridge near which the collision in question occurred.

6. As the tow approached that bridge, the tug was holding back in the face of oncoming eastbound tows holding close to Negro Point, and was just about maintaining steerage way, at about 150 feet off Wards Island, and her tow was following straight behind in the tide, which runs true in that vicinity.

7. The tow as made up was about 114 feet in width, and the longest barge, the Wollaston, was 231 feet long by 37½ feet beam, and the others were: Tompkinsville, 221 feet by 38.2 feet beam, and Hock, 209.4 feet long by 36.2 feet beam. The first two were lightly laden, and the third was light, and their freeboards varied from 6 to 7 feet.

The Baldrock is 142 feet between perpendiculars, 27.7 feet in beam, and is of 1,000 h.p.

The tow was therefore about 552 feet in length over-all, and about 114 feet wide.

8. The Middlesex, a single screw steam collier, is 369 feet long and 50.1 feet in beam, and her registered depth is 28 feet. Her horsepower is 1,800, and her tonnage is 4,727 gross, 2,780 net. On this voyage she was light and drew 8 feet forward and 17 feet aft.

9. When the Middlesex was off Sunken Meadow, heading toward New York or southwesterly, the tow was observed about one-half a mile ahead in the position stated in Finding 6. The Middlesex blew two blasts for agreement to her passing the tow on its port side. This was agreed to by an answering signal of two blasts, and the collier proceeded under full engine speed ahead of about 10 knots, or 8 knots over the ground against the flood tide.

10. Thereafter the Middlesex, proceeding in about the center of the channel, observed an oncoming eastbound tow which was holding close to her own port side of the channel in obedience to the recognized custom in those waters under the prevailing tide; that tow veered gradually to her starboard, making over to the Astoria shore as she passed under the Railroad Bridge in question.

11. The Middlesex proceeded at full speed, intending to pass between that eastbound tow and the Baldrock and her tow.

12. The Middlesex passed so close to the Tomkinsville in the effort to avoid the eastbound tow, that she created sufficient suction to cause the latter to sheer to her own port and into collision with the Middlesex, causing damage to both vessels and to the Wollaston. The Middlesex did not blow an alarm even when the collision was imminent, nor did she slow down or stop her engines, and after it happened she passed on with undiminished speed.

13. The Baldrock tried to break the sheer by a sharp left rudder, and the captain of the Tomrkinsville tried to overcome it by a sharp right rudder. These efforts were not criticised and are found to have been proper, and to have constituted all that could have been done by either vessel to avoid the collision.

14. The Baldrock was not at fault in her navigation, or in any respect as to the handling of her tow.

15. The sheer of the Tompkinsville was caused solely by the speed at which the Middlesex passed, and her proximity to the Tompkinsville when in the act of passing. The Middlesex tried to avoid the collision by a left rudder, but her course was not changed more than one point to port.

16. The collision took place about 350 feet easterly from the Railroad Bridge, where the channel is about 700 feet wide.

### Conclusion.

In the first cause, the libelant is entitled to the usual decree and the appointment of a commissioner to find the amount of damages.

In the second cause, the libelant is entitled to a similar decree, with costs, against

the Middlesex only; her libel against the Tompkinsville is dismissed, without costs.

In the third cause, the claimant is entitled to a decree, dismissing the libel against the Baldrock and the Tompkinsville.

The Eastern is to have one bill of costs against the Middlesex.

Settle decree.